**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| **JOHN J. JEFFERS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Cause No. 1:25-cv-00257-ALT** |
| ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** *sued as Frank Bisignano,* ) | |
| *Commissioner of Social Security* ) | |
| *Administration,* ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Plaintiff John J. Jeffers appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying his application under the Social

Security Act (the "Act") for a period of disability, Disability Insurance Benefits (DIB), and

Supplemental Security Income (SSI) for the period of May 13, 2020, through April 11, 2021. [1]

(ECF 1). Jeffers filed his opening brief on December 19, 2025, and the Commissioner filed a

response in opposition on March 19, 2026. (ECF 19, 25). Jeffers filed a reply brief on May 1,

2026. (ECF 28). Therefore, the case is ripe for ruling.

For the following reasons, the Commissioner's decision will be AFFIRMED.

## I. FACTUAL AND PROCEDURAL HISTORY

Jeffers first applied for SSI and DIB in 2021, alleging disability beginning May 13, 2020.

---

[1] Jeffers does not challenge the Commissioner's final decision to the extent it found him disabled for the period beginning April 12, 2021.

(ECF 10 Administrative Record ("AR") at 26).[2]  The Administrative Law Judge (ALJ) returned an unfavorable decision on March 2, 2023. (*Id*. at 41). The Appeals Council denied the request for review on April 14, 2023. (*Id*. at 9). Jeffers then appealed the unfavorable decision to the United States District Court, where the case was remanded back to the Social Security Administration for "further proceedings," which included updating the administrative record and a new hearing. (*Id.* at 568).

Prior to the remand at the District Court, Jeffers filed new SSI and DIB applications on May 22, 2023. (*Id*. at 576). After the remand, the Appeals Council ordered the applications to be consolidated into one claim. (*Id*.). On August 6, 2024, Jeffers appeared for a phone hearing before Administrative Law Judge (ALJ) William D. Pierson. (AR 441, 462, 513-47). Jeffers was represented by counsel, and vocational expert (VE) Mary Harris also appeared. (AR 441, 513). The ALJ issued a partially favorable decision on September 25, 2024, concluding that beginning on April 12, 2021, there were no jobs that exist in significant numbers in the national economy that Jeffers could perform, but prior to April 12, 2021, Jeffers did not have any severe impairment (AR 442, 444, 462). Because this case has been previously remanded, the ALJ's decision is the final decision of the agency. 20 C.F.R. §§ 404.981, 416.1481; *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

Jeffers filed a complaint in this district court requesting review of the Commissioner's final decision on May 21, 2025, as to the denial of disability for the period of May 13, 2020, through April 11, 2021. (ECF 1). In this appeal, Jeffers argues the ALJ erred by finding no severe impairments at step two of the sequential analysis as to this period of time. (ECF 19 at 8).

---

[2] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

On the date of the Commissioner's final decision, Jeffers was fifty-three years old (*see* AR 497) and had at least a high school education and a work history of light or medium exertional work (AR 461; *see* AR 71-72). Jeffers alleges disability due to attention-deficit/hyperactivity disorder (ADHD); adjustment disorder; major depressive disorder, severe without psychotic features; general anxiety disorder; mild intellectual disability; post-traumatic stress disorder (PTSD); degenerative joint disease of the knee and hip; and trochanteric bursitis. (ECF 19 at 5).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner … are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant]

3

is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. §§ 404.1520, 416.920. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant's maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the

4

burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

### B. The Commissioner's Final Decision

At step one, the ALJ found Jeffers had not engaged in substantial gainful activity since May 13, 2020, the alleged onset date. (AR 444). At step two, the ALJ found that Jeffers had no severe impairments prior to April 12, 2021, but had the following severe impairments beginning on April 12, 2021: obesity, degenerative joint disease and arthritis of the knee and hip, and trochanteric bursitis of the right hip; adjustment disorder, ADHD, PTSD, generalized anxiety disorder, and major depressive disorder. (AR 444, 545-55). At step three, the ALJ found since April 12, 2021, Jeffers had not had an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 454).

The ALJ assigned Jeffers the following RFC:

> [S]ince April 12, 2021, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he requires opportunity to alternate between sitting and standing as needed; and is limited to simple routine tasks and instructions.

(AR 455-56).

At step four, the ALJ found Jeffers was unable to perform any past relevant work since April 12, 2021 (AR 461). At step five, the ALJ found that beginning on April 12, 2021, considering a hypothetical individual of Jeffers' age, education, experience, and RFC, there were no jobs that exist in significant numbers in the national economy that he could perform. (AR

5

462). The ALJ issued a favorable decision as to Jeffers' applications for SSI and DIB with a disability date of April 12, 2021, but not prior to that date. (AR 462). It is the period of non-disability from May 13, 2020, to April 11, 2021, that Jeffers challenges in this appeal.

*C. Determination of Severe Mental Impairments Prior to April 12, 2021*

Jeffers argues the ALJ erred when finding no severe impairment from May 13, 2020, to April 11, 2021, at step two of the sequential analysis. (ECF 19). Regarding mental impairments, Jeffers first argues that the ALJ erred by failing to consider the consultative opinion of Leslie Predina, Ph.D., who examined Jeffers in November 2023, when considering Jeffers' mental impairments for the period of May 13, 2020, through April 11, 2021. (ECF 19 at 9-11). Jeffers also argues that the ALJ erred when evaluating the consultative opinions of Dan Boen, Ph.D., who examined Jeffers in August 2021, and Amanda Mayle, Psy.D., who examined Jeffers in December 2021. (*Id.*).

First, the ALJ did not err when evaluating Dr. Boen and Dr. Mayle's opinions. Jeffers argues it is unclear how the ALJ viewed these opinions due to the ALJ's muddied language. (ECF 19 at 11). However, the ALJ minimally articulates his reasoning to support his finding of no severe mental impairment. *See Warnell v. O'Malley,* 97 F.4th 1050, 1053 (7th Cir. 2024) ("Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements."). The ALJ discounts Dr. Mayle's opinion in large part because it was based mostly on Jeffers' subjective reporting. (AR 452-53). As to Dr. Boen's opinion, the ALJ explains, it "is more consistent with the record and better supported by the exam findings" and is "partially persuasive but only with respect to the period since the established onset date" of April 12, 2021. (AR 453). This is in part because the ALJ found Jeffers' mental health treatment records show symptoms consistent with Dr. Boen's opinion but these records "are relative to the period after the established onset date" of April 12, 2021. (*Id.*).

6

In addition, the ALJ discounts the opinions because they were rendered after the established onset date of April 12, 2021, and "are not accompanied by medical treatment records reflecting significant mental impairments and clinical findings supporting a finding of severe mental limitations of function, prior to the established onset date…" (AR 453). Although Jeffers criticizes this reasoning, the ALJ's position is legally sound. Both Dr. Boen and Dr. Mayle's opinions are from after April 2021 and while they summarize Jeffers' report of some symptoms as to "the past two years", the opinions do not offer a retrospective opinion as to Jeffers' mental state beginning in May 2020. (*See* AR 367-74, 376-81). Rather, both opinions evaluate Jeffers' mental state at the time of the examination and offer a medical source statement for the future.

And even if Dr. Boen and Dr. Mayle's opinions did offer retrospective analyses, which they do not, "a medical advisor's retrospective diagnosis may be considered only if corroborated by evidence contemporaneous with the period of eligibility." *Stacy W. v. Kijakazi*, No. 19 C 5988, 2022 WL 991966, at *8 (N.D. Ill. Apr. 1, 2022). This reasoning is also found in *McHenry v. Berryhill* where the court "affirmed the ALJ's decision not to rely on a retrospective opinion as to the claimant's mental limitations because it came over one year after the [date last insured] and there was little contemporary evidence to support that opinion." *Id*. (citing *McHenry v. Berryhill*, 911 F.3d 866, 869 (7th Cir. 2018)).

Jeffers' briefs have pointed to no evidence from the period preceding April 12, 2021, that could corroborate Dr. Boen and Dr. Mayle's opinions. Although Jeffers cites to *Blankenship v. Commissioner of Social Security*, which cautions the Court in evaluating a lack of treatment as evidence for lack of mental illness, Jeffers' position is unpersuasive. (ECF 19 at 12-13 (citing *Blankenship v. Comm'r of Soc. Sec.*, No. 1:22-cv-00018-SLC, 2022 WL 17495240 (N.D. Ind. Dec. 7, 2022)). "It is not enough for the plaintiff to simply produce a diagnosis with a retroactive onset date." *Gutka v. Apfel*, 54 F. Supp. 2d 783, 786 (N.D. Ill. 1999). The "absence of evidence

7

amounts to a failure of proof on Plaintiff's part, not a failure on the part of the ALJ." *Stacy W.*, 2022 WL 991966, at *8 (citation and quotation marks omitted). As such, the ALJ properly discounted the opinions of Dr. Boen and Dr. Mayle for the period of May 13, 2020, through April 11, 2021, and the ALJ's conclusion is supported by substantial evidence.

Turning to Dr. Predina's opinion, Dr. Predina examined Jeffers on November 6, 2023, and diagnosed him with major depressive disorder, PTSD, generalized anxiety disorder, and ADHD. (AR 4159-62). Like Dr. Boen and Dr. Mayle, nowhere in the report does Dr. Predina indicate the examination, or diagnoses relate to the period of May 13, 2020, to April 11, 2021, or make statements regarding Jeffers' mental state in the past. (*Id*.). Thus, this too is not a retroactive opinion and does not directly relate to the period in question.

Having said that, in a perfect decision, the ALJ would still have discussed Dr. Predina's opinion and provided reasoning as to whether the opinion may or may not relate to Jeffers' mental status during the period from May 13, 2020, to April 11, 2021, especially considering later in the decision the ALJ finds Dr. Predina's opinion to be partially persuasive. (AR 461). The ALJ should have explained whether Dr. Predina's opinion was partially persuasive as to Jeffers' mental status prior to April 12, 2021, in addition to after. *See Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period." (citation omitted)).

But a perfect decision is not required, and any error made here was harmless. "Courts conducting judicial review in social security cases do not require perfect opinions or rigid, mechanical formulaic applications of governing legal principles." *Ephrain S. v. Berryhill*, 355 F. Supp. 3d 738, 749 (N.D. Ill. 2019) (citation and brackets omitted). "After all, no one is perfect, and thus, the law does not demand perfection." *Id.* (citations omitted). As previously explained,

8

this opinion is not retroactive, but even if it was, retroactive medical opinions must be corroborated by evidence contemporaneous with the period of eligibility. *Stacy W.*, 2022 WL 991966, at *8. Due to the lack of evidence, Dr. Predina's medical opinion can be discounted just as Dr. Boen and Dr. Mayle's opinions. Consideration of Dr. Predina's opinion would not change the outcome of the Commissioner's unfavorable portion of the decision, and the ALJ's decision is supported by substantial evidence.

Jeffers also argues the ALJ erred by failing to consider Jeffers' PTSD diagnosis for the period of issue. (ECF 19 at 13). Reviewing the medical opinions which address Jeffers' mental health, the only doctor who diagnosed Jeffers with PTSD was Dr. Predina in her 2023 exam. (AR 4159-62). As previously explained, this is not a retroactive opinion and does not directly relate to the period in question. And even if this diagnosis of PTSD were retroactive, as previously explained, retroactive medical opinions must be corroborated by evidence contemporaneous with the period of eligibility. *Stacy W.*, 2022 WL 991966, at *8. Jeffers has pointed to no evidence of PTSD contemporaneous with the period of May 13, 2020, to April 11, 2021. While Jeffers' briefs point to various medical documents, these documents are from 2022 to 2023 and include statements about how Jeffers remembers feeling in the past, and thus are not contemporaneous with the period in question. "It is not enough for the plaintiff to simply produce a diagnosis with a retroactive onset date." *Gutka*, 54 F. Supp. 2d at 786. The "absence of evidence amounts to a failure of proof on Plaintiff's part, not a failure on the part of the ALJ." *Stacy W.*, 2022 WL 991966, at *8. The ALJ's decision is supported by substantial evidence.

*D. Determination of Severe Physical Impairments Prior to April 2021*

Plaintiff first argues that the ALJ erred by failing to consider the persuasiveness of the examining opinion of Vijay Veerula, D.O., as it relates to the period prior to April 12, 2021. (ECF 19 at 15). Dr. Veerula's November 2023 report is technical and measures Jeffers' strength and

physical health in various ways, but in no way indicates an onset date of Jeffers' condition. (AR 4163-75). Although the ALJ did not discuss Dr. Veerula's opinion in the section which addresses the period before April 12, 2021, later in the decision the ALJ provides,

> Dr. Veerula's opinion is not entirely persuasive. Dr. Veerula saw the claimant once and not in a treating context. The opinion is not well supported as the exam was rather unremarkable in support of a medically necessary assistive device. Moreover, it is not consistent with the overall record nor with the claimant's testimony that he only began to use a cane three weeks prior to the hearing, and did not need one for much of the period since his established onset date. Therefore, this opinion is accorded only some partial consideration to the extent consistent and supported.

(AR 460).

Given the ALJ's decision should be read holistically, *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021), this explanation is sufficient. ALJs are subject to minimal articulation requirements and in reading this, the reader can understand why the ALJ does not find Dr. Veerula's opinion persuasive. *See Warnell,* 97 F.4th at 1053. These reasons are applicable to the opinion overall, such as that Dr. Veerula saw Jeffers once and not in a treating context and that the opinion is inconsistent with the record, whether the opinion is being considered for pre- or post-April 12, 2021, periods.

Next, Jeffers argues that the ALJ failed to build a logical bridge from the ALJ's acknowledgement that Jeffers' degenerative changes did not appear overnight to the conclusion of no severe impairment prior to the actual diagnosis after April 12, 2021. (ECF 19 at 15-16). Jeffers points to several pieces of evidence of his physical challenges prior to April 12, 2021. Jeffers alleges he stopped working in May 2020 because he moved to Indiana and because he was experiencing pain in his legs and lower back. (AR 241). The ALJ also acknowledged the personal testimony of Jeffers and his stepdaughter, alleging Jeffers' difficulty in completing household tasks in 2020. (AR 445-46). Lastly, Jeffers points to a March 2023 document where he states his right knee pain began in March 2021. (AR 870).

10

The ALJ acknowledges all this evidence in the decision and goes on to explain

> Again, there is minimal treatment in 2020. Even in May 2021, claimant's reports of physical symptoms indicate only a month or two of complaints…Further, as of December 2020, the exam was overall unremarkable and the claimant indicated no ongoing problems. It was noted the claimant "reports no problems just needs to establish with a doctor since moving." In fact, the review of systems was negative. (Review of Systems is a list of body systems to which are attached symptoms that the claimant either endorses or denies). In the review of systems, the claimant denied dizziness, sleep issues, headaches, lightheadedness, chest pain, palpitations, leg swelling, cough, chest tightness, wheezing, fatigue, and vision issues. The clinical findings included no distress, orientation times three, normal mood, normal affect, normal behavior, orientation times three, alert demeanor, normal respiratory function, normal cardiological exam, etc. Significant joint pains, intellectual deficits, depression, anxiety, etc., were not reported as complaints, or as positives in the systems review or through clinical findings. Again, the claimant had reported "no problems." The examinations were also negative (Exhibit 1F/8; 14F/523-526). In sum, the claimant's impairments, considered singly and in combination, have not significantly limited the claimant's ability to perform basic work activities. Thus, prior to April 12, 2021, the claimant did not have a severe impairment or combination of impairments.

(AR 451). By acknowledging the evidence given by Jeffers of his physical challenges and returning to the minimal medical treatment in this period, the ALJ builds a logical bridge to a finding of no severe impairment on the basis of minimal medical treatment evidence. The ALJ decision is supported by substantial evidence.

Lastly, Jeffers argues the ALJ failed to create a logical bridge to the finding that Jeffers' obesity is not severe prior to April 12, 2021. (ECF 19 at 16-18). Jeffers does not understand why the ALJ found a severe impairment as of April 12, 2021, but not before, and argues the ALJ should have done so. (*Id.* at 16). However, the ALJ acknowledged the role obesity plays in analyzing impairments.

> The combined effects of obesity with other impairment(s) may be greater than the effects of each of the impairments considered separately. For example, someone who has obesity and arthritis affecting a weight bearing joint may have more pain and functional limitations than the person would have due to arthritis alone. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week, or equivalent schedule.

(AR 446). Then, as previously stated, the ALJ provided a lengthy analysis of the lack of medical evidence and minimal treatment prior to April 12, 2021. (AR 451). Given this lack of evidence, the ALJ found that

> Based upon the medical evidence of record, the claimant's medically determinable impairments, obesity, right knee pain, history of hypertension, and mental impairments, considered singly or in combination, do not cause more than a minimal limitation on the claimant's ability to perform basic work activities and are likewise determined as nonsevere.

(AR 450). The ALJ considered the role obesity plays in analyzing impairments but ultimately provided a thorough explanation of the lack of medical evidence from the period at issue. The ALJ met the requirement of minimal articulation and properly built a logical bridge from the lack of evidence to an inability to find a severe impairment before April 12, 2021. *See Warnell,* 97 F.4th at 1053. The ALJ's decision is supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of Commissioner and against Jeffers.

SO ORDERED.

Entered this 1st day of June 2026.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge